IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| BARBARA RAINEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-CV-03112-SRB |
| | ) | |
| STANDARD GUARANTY INSURANCE | ) | |
| COMPANY, d/b/a ASSURANT, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| NATIONSTAR MORTGAGE, LLC, | ) | |
| d/b/a MR. COOPER, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Defendant Standard Guaranty Insurance Company's ("Standard") Motion to Dismiss (Doc. #15), Defendant Nationstar Mortgage, LLC's ("Nationstar") Motion to Dismiss Plaintiff's First Amended Complaint (Doc. #17), and Plaintiff Barbara Rainey's ("Plaintiff") Motion to Strike Exhibit A to Nationstar's Reply in Support of Its Motion to Dismiss (Doc. #45). For the reasons stated below, Defendants' motions to dismiss are GRANTED and Plaintiff's motion to strike is DENIED.

### I. BACKGROUND

This suit arises from the total fire loss of a residential property located in Greene County, Missouri, at 6058 E. Primrose Lane, Springfield, Missouri, 65809 (the "Property"), and a dispute over insurance coverage of that real property. The complicated factual background of this case is briefly summarized below. Since this matter is before the Court on a motion to dismiss, the fact allegations set forth in Plaintiff's complaint are taken as true. *See Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (internal citations and quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Plaintiff Barbara Rainey was previously married to Earl Daniel Rainey, Jr., who is now deceased ("Decedent"). At some point during their marriage, Plaintiff and Decedent purchased the Property and executed a promissory note secured by a deed of trust in favor of First Horizon Home Loan Corporation. Nationstar was the ultimate successor in interest to the promissory note and deed of trust via assignment. Plaintiff's marriage to Decedent ended by divorce on February 28, 2003. The divorce decree ending their marriage required Decedent to draft a quit-claim deed for Plaintiff to execute, which would convey her interest in the Property to Decedent. However, Decedent never provided Plaintiff with the quit-claim deed, and Plaintiff contends she retained an interest in the Property post-divorce as a tenant in common with Decedent due to her continued liability for the home loan under the promissory note and deed of trust. At some point, Plaintiff remarried her current spouse, David Pulkrabek ("Pulkrabek").

During the course of 2016, Decedent allowed the hazard insurance on the Property to lapse. Nationstar secured a lender-placed insurance policy through Standard (d/b/a Assurant) on the Property with an effective date of November 6, 2016 to November 6, 2017 (the "Standard Policy"). Decedent passed away on August 30, 2017. Following Decedent's death, Plaintiff and Pulkrabek purchased an insurance policy for the Property from USAA Insurance Agency, Inc. ("USAA") to protect her claimed interest in the Property. USAA issued an insurance policy effective from September 6, 2017 to September 6, 2018 ("the USAA Policy") which named Nationstar as a loss payee up to the amount of its interest in the Property. On September 18, 2017, a fire destroyed the Property. Decedent's Estate, represented by Pulkrabek, and Plaintiff filed a claim with Standard demanding payment under the Standard Policy, which Standard

subsequently denied, stating that the fire loss had been addressed by a claim filed by Plaintiff and Pulkrabek under the USAA Policy.

Prior to filing the instant lawsuit in federal court, Plaintiff and Pulkrabek filed suit against Defendants and USAA in Missouri state court in 2018. While the Court lacks a complete picture of those state court proceedings, it is apparent that some of the matters raised in instant case have been litigated extensively. In particular, Standard notes the Greene County Circuit Court issued an interlocutory judgment on May 28, 2019, determining that Plaintiff's interest in the Property was transferred to Decedent by operation of their divorce decree and thereby divested her of all right, title, and interest she may have otherwise had in the Property. (Doc. #16-2.) Standard also states that following the issuance of that interlocutory judgment, Plaintiff subsequently dismissed her claims against Standard and Nationstar in the state court action on November 19, 2019, and contends that she now seeks to reassert those claims, along with others, in the instant case.

Plaintiff initiated her instant suit against Defendants in this Court on April 16, 2020, asserting the following causes of action: (1) Count I: Declaratory Judgment [under] 28 U.S.C. § 2201 (against Standard and Nationstar); (2) Count II: Breach of Contract (against Standard); (3) Count III: Vexatious Refusal (against Standard); (4) Count IV: Breach of Contract (against Nationstar); (5) Count V: Breach of Implied Covenant of Good Faith and Fair Dealing (against Nationstar); (6) Count VI: Unjust Enrichment (against Nationstar); (7) Count VII: Violation of the Missouri Merchandising Practices Act ("MMPA") (against Nationstar); (8) Count VIII: Violation of the MMPA (against Standard); and (9) Count IX: Breach of Fiduciary Duty (against Nationstar). Defendants separately moved for dismissal of all claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). After briefing on the motions to dismiss concluded,

Plaintiff filed a Motion to Strike Exhibit A to Nationstar's Reply in Support of its Motion to Dismiss (Doc. #45).

## II. LEGAL STANDARD

Pursuant to Rule 12(b)(6), a claim may be dismissed for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570) (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ash v. Anderson Merchs., LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678) (quotation marks omitted). "The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, even if it strikes a savvy judge that actual proof of those facts is improbable." *Data Mfg., Inc. v. United Parcel Service, Inc.*, 557 F.3d 849, 851 (8th Cir. 2009). "In addressing a motion to dismiss, the court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (citations omitted).

## III. DISCUSSION

Following Defendants' filing of the instant motions to dismiss, Plaintiff moved to dismiss without prejudice Counts VII, VIII, and IX of her First Amended Complaint (Doc. #26), which the Court granted. (Doc. #39.) Accordingly, the Court considers if dismissal of the remaining Counts I–VI is warranted and addresses each Count in turn below. All parties cite to Missouri caselaw in their briefing and do not dispute that Missouri substantive law controls.

4

Case 6:20-cv-03112-SRB   Document 46   Filed 09/15/20   Page 4 of 17

## A. Count I: Declaratory Judgment Under 28 U.S.C. § 2201

Rule 57, which operates in conjunction with the Declaratory Judgment Act, permits parties to obtain a declaratory judgment to determine their respective rights and obligations in cases involving actual controversies. *See* 28 U.S.C. § 2201(a); Fed. R. Civ. P. 57; *see also, e.g.*, *W. Heritage Ins. Co. v. Love*, 24 F. Supp. 3d 866, 875–76 (W.D. Mo. 2014), *aff'd sub nom. W. Heritage Ins. Co. v. Asphalt Wizards*, 795 F.3d 832 (8th Cir. 2015) (noting that a federal district court, sitting in diversity, is authorized by Rule 57 and § 2201 to issue declaratory judgment as a remedy in a case over which it otherwise has jurisdiction). Declaratory judgments are a procedural remedy, not a substantive right to litigate in federal court, and district courts generally have "unique and substantial" discretion to decide whether to entertain an action under the Declaratory Judgment Act. *Lexington Ins. Co. v. Integrity Land Title Co.*, 721 F.3d 958, 967 (8th Cir. 2013) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995)).

Under Count I, Plaintiff seeks a declaration regarding her rights and the legal obligations of Defendants under the Standard Policy secured by Nationstar. Plaintiff seeks a declaration that she has an insurable interest in the Property, she is a "borrower" under the Standard Policy, and she is either entitled to her share of proceeds or the policy limits under that Policy, the amount of which would be determined at trial. Both Standard and Nationstar seek dismissal of Count I, but they advance different legal reasons for why dismissal is appropriate.[1] Each is addressed below.

---

[1] While prior state court litigation is mentioned briefly by Defendants, it is unclear whether that litigation is ongoing and what substantive claims in the instant suit, if any, were previously adjudicated. Further, neither Defendant argues that Plaintiff's claims are barred by res judicata, collateral estoppel, or subject to abstention. The Court notes that "the full scope of a district court's discretion to . . . abstain from exercising jurisdiction under the Declaratory Judgment Act differs depending upon whether a 'parallel' state court action involving questions of state law is pending." *Lexington Ins. Co.*, 721 F.3d at 967 (citing *Scottsdale Ins. Co. v. Detco Indus., Inc.*, 426 F.3d 994, 999 (8th Cir. 2005)). Since Defendants do not raise the issue and the Court finds that dismissal of Plaintiff's declaratory relief claim is warranted on other grounds, it is not necessary for the Court to determine whether there are parallel state proceedings that necessitate abstention under *Scottsdale* or any other abstention doctrine. *See also GEICO Cas. Co. v. Isaacson*, 932

### i. Declaratory Judgment Against Defendant Standard

Standard argues that Count I should be dismissed because it is duplicative of the breach of contract claim asserted by Plaintiff in Court II, citing for support *Amerisure Mut. Ins. Co. v. Maschmeyer Landscapers, Inc.*, No. 06-CV-1308, 2007 WL 2811080, at *2 (E.D. Mo. Sept. 24, 2007). Plaintiff, relying on *City of Grandview v. Missouri Gas Energy*, No. 11-00822, 2012 WL 12897092, at *3 (W.D. Mo. Aug. 8, 2012), argues that she asks the Court to construe and enforce the terms of the Standard Policy, not declare whether Standard breached the terms of its contract. In its reply, Standard contends Count I would be rendered moot by the adjudication of Plaintiff's breach of contract claim because all the relief requested by Plaintiff in Count I is necessarily or expressly encompassed by her breach of contract claim.

In general, "[t]he existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is otherwise appropriate." Fed. R. Civ. P. 57; *see also* Fed. R. Civ. P. 8(a)(3), 8(d)(3) (a party may seek different types of relief, whether legal or equitable in nature and even if inconsistent with each other). Under Missouri law, however, "[t]he absence of an adequate remedy at law is an element of a claim for declaratory relief." *Amerisure*, 2007 WL 2811080, at *2 (citing *Cincinnati Cas. Co. v. GFS Balloons*, 168 S.W.3d 523, 525 (Mo. App. E.D. 2005)); *accord Missouri Soybean Ass'n v. Missouri Clean Water Comm'n*, 102 S.W.3d 10, 25 (Mo. banc 2003). In the context of a contractual dispute, "[a] party may not use a declaratory judgment as a means of asking the court to declare that another has breached a contract." *City of Grandview*, 2012 WL 12897092, at *3 (citing *Amerisure*, 2007 WL 2811080, at *2).

---

F.3d 721, 724 (8th Cir. 2019) (quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942)) ("Rendering a declaratory judgment where there are parallel state court proceedings and no issues of federal law would '[o]rdinarily . . . be uneconomical as well as vexatious.'").

The Court finds that dismissal of Plaintiff's Count I claim is appropriate. Both *Amerisure* and *City of Grandview* observed that if a suit for breach of contract is an adequate remedy at law, a request for declaratory judgment seeking the same relief is duplicative. *See Amerisure*, 2007 WL 2811080, at *2; *City of Grandview*, 2012 WL 12897092, at *3. Here, Plaintiff requests the Court declare her rights and obligations under the Standard Policy in place at the time of the fire and find that she is entitled to either her share of proceeds or the policy limits under that Policy, in an amount to be determined at trial. That is, in essence, the same relief sought by her breach of contract claim and her vexatious refusal claims against Standard, and the adjudication of those claims would render Plaintiff''s requested declaratory relief either moot and/or redundant. *See Amerisure*, 2007 WL 2811080, at *2 (finding a breach of contract claim will provide an adequate remedy of law where "[a]djudication of the breach of contract claim would render the request for declaratory judgment moot or redundant [and] a ruling on the merits of the declaratory judgment action would not address the issue of damages pursuant to the breach of contract claims").

Plaintiff argues that by requesting declaratory relief, she is simply asking the Court to "construe and enforce the terms" of the Standard Policy "in other respects." (Doc. #24, p. 6.) This argument is a distinction without a difference, given the nature of her claims and the factual circumstances of this case. Accordingly, dismissal of Count I against Standard is proper. *See, e.g.*, *Jackson v. Mizuho Orthopedic Sys., Inc.*, No. 11-CV-00799, 2013 WL 12291776, at *10 (W.D. Mo. Jan. 9, 2013) (citation omitted) ("When an adequate remedy at law exists, the court need not resort to granting declaratory relief.").[2]

---

[2] Given this Court's additional determination that Plaintiff lacks standing to sue Standard for its alleged breach of the Standard Policy, *see infra* Section III.B, dismissal of Count I is also warranted because Plaintiff has no legally protectable interest at stake. *See Gen. Motors Acceptance Corp. v. Windsor Grp., Inc.*, 2 S.W.3d 836, 839 (Mo. App. E.D. 1999) (citations omitted) ("Standing to bring a declaratory judgment action requires the plaintiff to have a legally protectable interest at stake. . . . In contract actions,

7

Case 6:20-cv-03112-SRB   Document 46   Filed 09/15/20   Page 7 of 17

### ii. Declaratory Judgment Against Defendant Nationwide

Nationstar argues dismissal of Count I is warranted because Plaintiff seeks no declaratory relief against Nationstar. Plaintiff responds that she sufficiently states her claim for declaratory relief and argues Nationstar is an appropriate party for her declaratory judgment claim because its claimed interest in the Property is excessive. Upon reviewing the allegations contained in her amended complaint, the only declaratory relief sought by Plaintiff which relates to Nationstar is her request for the Court to declare that she is entitled to either the policy limits of the Standard Policy or her share of proceeds, "less the amount necessary to satisfy Nationstar's interest in the Property." (Doc. #4, ¶¶ 81, 84.) Plaintiff also alleges "Nationstar has received compensation for its interests in the Property and no longer has any right to payment under the promissory note or deed of trust," which Nationwide confirms. (Doc. #4, ¶ 88.) The Court finds dismissal of Count I proper since Plaintiff seeks no declaratory relief regarding Nationwide and, as discussed earlier, the resolution of her other claims against Nationwide would render her declaratory relief claim moot or redundant. Dismissal of Count I against Nationstar is granted.

### B. Count II: Breach of Contract by Standard

To state a claim for breach of contract under Missouri law, the plaintiff must allege facts showing: "(1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 850 (8th Cir. 2014) (citing *Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 104 (Mo. banc 2010)). "Only parties to a contract and any third-party beneficiaries of a contract have standing to

---

a party has a legally protectable interest at stake if it has a right to enforce the contract as a party thereto or as a third-party beneficiary.").

8

Case 6:20-cv-03112-SRB   Document 46   Filed 09/15/20   Page 8 of 17

enforce that contract." *Torres v. Simpatico, Inc.*, 781 F.3d 963, 971 (8th Cir. 2015) (quoting *Verni v. Cleveland Chiropractic Coll.*, 212 S.W.3d 150, 153 (Mo. banc 2007)).

Standard argues that Count II should be dismissed because Plaintiff is not a party to the contract she is seeking to enforce (here, the Standard Policy), nor is she a third-party beneficiary. Plaintiff concedes that she is not a party to the Standard Policy, but argues she has standing as a third-party beneficiary to enforce the terms of the Standard Policy under the "open loss clause" contained within the Policy, citing for support *Gen. Motors Acceptance Corp. v. Windsor Grp., Inc.*, 2 S.W.3d 836, 839 n.6 (Mo. App. E.D. 1999). In its reply, Standard contends that *Windsor Group* is distinguishable because this case involves a lender-placed insurance policy which the parties to the contract (Nationstar and Standard) secured without any intent to benefit Plaintiff.

Under Missouri law, "[a] third party beneficiary is one who is not privy to a contract or its consideration but who may nonetheless maintain a cause of action for breach of the contract." *L.A.C. ex rel. D.C. v. Ward Parkway Shopping Ctr. Co., L.P.*, 75 S.W.3d 247, 260 (Mo. banc 2002) (citation omitted). "Only those third parties for whose primary benefit the parties contract may maintain an action." *Id.* "[A] third party may not recover if that party is only incidentally, indirectly or collaterally benefited by the contract." *Kester v. Kester*, 108 S.W.3d 213, 226 (Mo. App. S.D. 2003). In determining whether an individual is a third-party beneficiary with standing to enforce a contract, "[t]he intention of the parties is to be gleaned from the four corners of the contract and, if uncertain or ambiguous, from the circumstances surrounding its execution." *Ward Parkway Shopping Ctr.*, 75 S.W.3d at 260 (citation omitted). "Although it is not necessary that the third-party beneficiary be named in the contract, the terms of the contract must express directly and clearly an intent to benefit an identifiable person or class." *Id.*

After reviewing the Standard Policy and relevant caselaw cited by the parties, the Court finds that Plaintiff is not a third-party beneficiary with standing to enforce the contract. The Standard Policy is a lender-placed insurance policy, meaning an insurance policy secured by a mortgagee or lender—here, Nationwide—to protect its interest in a property when the borrower or mortgagor fails to secure or maintain insurance coverage. *See Herd v. Am. Sec. Ins. Co.*, 556 F. Supp. 2d 992, 998 (W.D. Mo. 2008) (citations and quotation marks omitted) ("Forced place insurance is a policy purchased by a mortgagee when the mortgagor's policy lapses for whatever reason," intended to "protect the mortgagee's interest in the property which is the subject of the mortgage."). The Court finds no language in the Standard Policy expressing a direct and clear intent to benefit Plaintiff. *See McKenzie v. Columbian Nat. Title Ins. Co.*, 931 S.W.2d 843, 845 (Mo. App. W.D. 1996) (citation omitted) ("Third party beneficiary status depends not so much on a desire or purpose to confer a benefit on the third person, but rather on an intent that the promisor assume a *direct obligation* to him.") (emphasis in original). Plaintiff's benefit under the Standard Policy, if any, would be incidental or collateral given that the Standard Policy was secured by Nationstar to protect its own interest in the Property.

Plaintiff argues the Standard Policy's "open loss clause" reflects the clear intent of the parties to confer a benefit on borrowers by designating them as a loss payee, and contends that she consequently has standing to enforce the contract since she meets the contractual definition of a "borrower." Plaintiff's argument solely relies on *Gen. Motors Acceptance Corp. v. Windsor Group*, which determined that a lender named as a loss payee in an automotive insurance policy purchased by the borrower had standing to enforce the insurance contract as a third-party beneficiary. *See* 2 S.W.3d at 839. The Court finds this case is distinguishable from *Windsor Group*. Here, Nationstar secured the Standard Policy to protect its interest in the Property

10

because the Decedent's insurance coverage had lapsed, and Plaintiff admits Nationstar is the only named insured under the Standard Policy. Even if Plaintiff qualifies as a "borrower" under the Standard Policy, the Court finds that she would still lack standing as a third-party beneficiary given the contractual language in the Standard Policy and the circumstances of its execution. The Court finds more persuasive *Rice v. Standard Guaranty Insurance Co.*, No. 15-CV-1039, 2016 WL 6684205, at *2 (E.D. Mo. Nov. 14, 2016), which considered if a property owner had standing to sue for the breach of a lender-placed insurance policy despite not being a party to the insurance contract. In *Rice*, Judge Ronnie White—reviewing a Standard insurance policy containing the same open loss clause as the one at issue here—found the lender-placed insurance policy had not been secured for the primary benefit of the property owner and, in turn, the property owner lacked standing as a third-party beneficiary enforce the policy. *Id.* at *2. The outcome here is the same. Since Plaintiff in this case is, at most, only incidentally or collaterally benefitted by the Standard Policy, she lacks standing to sue for breach of contract and Count II is dismissed. *See Kester*, 108 S.W.3d at 226.

### C. Count III: Vexatious Refusal to Pay by Standard

Standard argues that because Plaintiff's breach of contract claim fails, so must her claim for vexatious refusal. The Court agrees. "Under Missouri law, vexatious refusal is derivative of a breach-of-contract claim." *Aziz v. Allstate Ins. Co.*, 875 F.3d 865, 869 (8th Cir. 2017) (citing *Fischer v. First Am. Title Ins. Co.*, 388 S.W.3d 181, 184, 192 (Mo. App. W.D. 2012) ("To establish a claim for vexatious refusal to pay, [plaintiff] would have to prove that: (1) he had an insurance policy with [the insurer], (2) [the insurer] refused to pay under the policy, and (3) [the insurer's] refusal was without reasonable cause or excuse."). Since Plaintiff is not a party to the

11

Standard Policy and lacks standing to enforce it for the reasons discussed above, her vexatious refusal claim necessarily fails. Count III is thus dismissed.

### D. Count IV: Breach of Contract by Nationwide

Plaintiff alleges Nationstar breached the terms of the mortgage, as set forth in the deed of trust, through numerous actions relating to its purchase of the Standard Policy. "Deeds of trust are subject to generally applicable rules of contract construction." *Grisham v. Mission Bank*, 531 S.W.3d 522, 537 (Mo. App. W.D. 2017) (citing *Central Bank of Kan. City v. Perry*, 427 S.W.3d 285, 288 (Mo. App. W.D. 2014)). "The first step in interpreting a contract is to ascertain the intent of the parties by looking at the words of the contract and giving those words their plain, ordinary and usual meaning." *Id.* (citations, alterations, and quotation marks omitted).

Plaintiff generally alleges Nationwide breached the deed of trust, but she does not point to the specific contractual provisions which form the basis of her claim. The gravamen of her claim is that Nationstar, by purchasing the Standard Policy, imposed upon her the heightened costs and expenses associated with that lender-placed policy. Plaintiff attached to her complaint a copy of the deed of trust (Doc. #4-2), and her allegations appear to be based on the property insurance provision ("Section 5"), which states in relevant part:

> If Borrower fails to maintain any of the [insurance] coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

(Doc. #4-2, p. 6.)

The Court finds that Plaintiff fails to state a viable claim for breach of contract against Nationstar. Even if Plaintiff has standing as a borrower under the deed of trust (a point which Nationwide disputes, based upon the operation of her divorce decree), the deed of trust permits the lender to purchase an insurance policy, at the borrower's expense, to protect its interests in the Property should the borrower fail to maintain hazard insurance coverage as required by the deed of trust. Further, the deed of trust permits a lender to purchase that lender-placed policy for any amount of coverage, including a policy which may be significantly more expensive than one the borrower might obtain, and states that amounts disbursed by the lender under Section 5 shall become the additional debt of the borrower. Given Plaintiff's admission that the Decedent failed to maintain insurance coverage on the Property, the allegations raised by Plaintiff refer to actions taken by Nationwide which are permitted under the deed of trust. In turn, Count IV is dismissed.

### E. Count V: Breach of Implied Covenant of Good Faith and Fair Dealing by Nationstar

Plaintiff also contends that Nationwide breached the deed of trust's implied covenant of good faith and fair dealing. Missouri law provides that "[a]s a general statement, a covenant of good faith and fair dealing is present in every contract." *Bishop v. Shelter Mut. Ins. Co.*, 129 S.W.3d 500, 505 (Mo. App. S.D. 2004). "The covenant of good faith is an obligation imposed by law to prevent opportunistic behavior, that is, the exploitation of changing economic conditions to ensure gains in excess of those reasonably expected at the time of contracting." *Hawthorn Bank & Hawthorn Real Estate, LLC v. F.A.L. Investments, LLC*, 449 S.W.3d 61, 65 (Mo. App. W.D. 2014) (citation and quotation marks omitted). However, Missouri law also provides that "there can be no breach of the implied promise or covenant of good faith and fair dealing where the contract expressly permits the actions being challenged, and the defendant acts

13

in accordance with the express terms of the contract." *Bishop*, 129 S.W.3d at 505 (citation omitted).

To the extent Plaintiff alleges that Nationwide breached the implied covenant of good faith and fair dealing by securing the Standard Policy and passing along some of the costs associated with that lender-placed policy onto her, her claim fails. As discussed earlier, the deed of trust expressly permitted Nationwide to secure a lender-placed policy when Decedent failed to maintain insurance coverage on the Property. The deed also expressly stated the borrower would be potentially responsible for the increased costs associated with obtaining a lender-placed policy, and that such costs may be significantly higher than those incurred from other policies. Plaintiff's allegations do not show that Nationstar failed to act in accordance with the express terms of the deed of trust.

Plaintiff also alleges Nationwide "was afforded substantial discretion in force-placing insurance coverage" and abused that discretion in bad faith by, inter alia, "manipulating the forced-place insurance market" and "purposefully selecting commercial force-placed insurance policies with artificially inflated premiums to maximize . . . profits." (Doc. #4, ¶ 124.) Missouri courts have observed that "[t]he covenant of good faith and fair dealing is not an overflowing cornucopia of wished-for legal duties." *Zubres Radiology v. Providers Ins. Consultants*, 276 S.W.3d 335, 340 (Mo. App. W.D. 2009) (citations omitted). Of the factual allegations levied by Plaintiff that are not conclusory or a mere naked assertion, none plausibly indicate Nationstar, in securing lender-placed insurance on the Property, used its discretion in a manner that "evade[d] the spirit of the transaction" or denied Plaintiff her "expected benefit" under the contract. *Id.*

Additionally, Plaintiff contends Nationstar breached the covenant of good faith and fair dealing by "renewing the force-placed policy after Plaintiff purchased a sufficient voluntary

14

policy." (Doc. #4, ¶ 124.) Nationstar asserts Plaintiff's claim is barred by Missouri's Collateral Protection Act (the "CPA"), Mo. Rev. Stat. § 427.110 *et seq*. Enacted in 1997, under the CPA a creditor that secures collateral protection coverage "in substantial compliance" with the terms of the Act "shall not be directly or indirectly liable in any manner to a debtor, cosigner, guarantor, or any other person in connection with the placement of the collateral protection coverage." Mo. Rev. Stat. § 427.150. The parties do not cite, nor could this Court locate, any cases interpreting what constitutes "substantial compliance" under the CPA.[3]

Plaintiff's sole argument against the applicability of the CPA is that Nationstar did not substantially comply with the Act's provisions. Primarily, Plaintiff's asserts that Nationstar did not comply with § 427.135, which requires a lender to cancel a lender-placed insurance policy upon receiving notice of a substitute insurance policy by the debtor. She also argues, without specificity, that Nationstar did not comply with other provisions of the CPA. Nationwide argues the complaint "alleges the necessary elements to bring Nationstar and this transaction under the requirements of RSMO 427.120" and contends that it substantially complied with all relevant provisions of the CPA, thus precluding it from liability on matters relating to its purchase of the Standard Policy.[4] (Doc. #37, p. 3.)

Upon review of the parties' arguments, the relevant law, and the record of this case, the Court additionally finds that even if Plaintiff stated a viable claim for breach of the implied covenant of good faith and fair dealing, her cause of action would be barred by the CPA. A plain

---

[3] *See generally* Mark E. Dapier et al., *Collateral Protection Insurance: Legislatures to the Rescue*, 55 CONSUMER FIN. L. Q. REP. 115, 116, 116 n.9 (2001) (noting that "[s]ubstantial compliance with the [state's collateral protection] statute often constitutes a complete defense to any claim challenging the purchase and placement of [collateral protection insurance].") (citing, e.g., Mo. Rev. Stat. § 427.150).

[4] Nationstar contends all of the claims Plaintiff asserts against it are barred under the CPA. While the Court finds Plaintiff's claims against Nationstar fail on multiple grounds, a plain reading of § 427.150 supports Nationstar's argument.

15

reading of § 427.150 indicates that if Nationstar substantially complied with the CPA in securing the Standard Policy, it cannot be liable "in any manner to a debtor, co-signor . . . or any other person in connection with" its purchase of the Standard Policy. Plaintiff's complaint shows that this case falls within the purview of the CPA: a credit transaction (the purchase of the Property) was reduced to a credit agreement (the deed of trust) requiring the debtor to maintain insurance protection on the collateral (the Property) and permitting the creditor to secure a lender-placed policy should the debtor's coverage lapse. *See* Mo. Rev. Stat. § 427.120(1)-(3). Additionally, Plaintiff alleges that the Decedent failed to maintain insurance coverage, triggering Nationwide's ability to secure the Standard Policy.

Plaintiff argues Nationstar failed to cancel the Standard Policy as required by § 427.135, which requires a lender-placed insurance policy to be cancelled if the debtor secures a substitute insurance policy with adequate coverage and provides the creditor with notice of that substitute policy. *See* Mo. Rev. Stat. § 427.135(1). However, § 427.135(2) allows the debtor to provide evidence of an adequate substitute insurance policy and request a cancellation of the lender-placed policy within thirty days of when the notice of the lender-placed policy purchase is sent. Plaintiff alleges that the Standard Policy was placed on the Property on November 14, 2016 (Doc. #4, ¶ 44), and that she purchased the USAA Policy on September 6, 2017 (Doc. #4, ¶ 52), which is outside the thirty-day window contemplated by § 427.135(2). In turn, Plaintiff's argument fails and the Court finds, based on the allegations set forth in the complaint, that Nationstar substantially complied with the relevant provisions of the CPA and thus cannot be held liable to Plaintiff on matters connected to its purchase of the Standard Policy. *See* Mo. Rev. Stat. § 427.150. Accordingly, Count V is dismissed.

### F. Count VI: Unjust Enrichment by Nationstar

Lastly, Plaintiff alleges that Nationstar was unjustly enriched "by receiving payment for the inflated premium on the [Standard] [P]olicy" and that, "as a result of Nationstar's scheme to charge inflated premiums, it would be unjust to allow Nationstar to retain the amounts" paid to it. (Doc. #25, pp. 4–5.) Under Missouri law, "[a] claim for unjust enrichment has three elements: [(1)] a benefit conferred by a plaintiff on a defendant; [(2)] the defendant's appreciation of the fact of the benefit; and [(3)] the acceptance and retention of the benefit by the defendant in circumstances that would render that retention inequitable." *Grisham*, 531 S.W.3d at 538 (citation omitted). However, implied contract claims—including unjust enrichment—"arise only when there is no express contract." *Id.* (quoting *Lowe v. Hill*, 430 S.W.3d 346, 349 (Mo. App. W.D. 2014)). Even if Plaintiff's unjust enrichment claim were not barred by the CPA, her claim fails because the deed of trust provides the contractual basis for Nationstar's ability to secure a lender-placed insurance policy. Since "[a] plaintiff cannot recover under an equitable theory when she has entered into an express contract for the very subject matter for which she seeks to recover," *id.* at 539, Plaintiff's unjust enrichment claim is dismissed.

### IV. CONCLUSION

Accordingly, it is hereby **ORDERED** that Defendant Standard's Motion to Dismiss (Doc. #15) is GRANTED, Defendant Nationstar's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. #17) is GRANTED, and Plaintiff's Motion to Strike Exhibit A to Nationstar's Reply in Support of Its Motion to Dismiss (Doc. #45) is DENIED.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH, JUDGE
DATE: September 15, 2020    UNITED STATES DISTRICT COURT